## Work's Appeal.

1. B. assigned his interest in a fund to M. His subsequent declarations were not competent evidence that he had previously made an assignment of the same interest to W., and that he had destroyed that assignment with the privity of M.

2. B. himself was a competent witness to prove those facts.

3. B. *after* the assignment to M. assigned the same interest to W., who was the husband of M., reciting that it was in the place of a previous assignment to W. which had been destroyed. *Held*, that this did not vest the interest in W.

4. B. and M. were arrested on the complaint of W., that they had fraudulently destroyed the assignment and stolen his goods. Whilst under arrest, as a condition of discharge, they both executed an assignment to W. of B.'s interest. *Held*, not to be binding as having been done under duress.

5. There was evidence that the first assignment to W. was to him as a " naked trustee" for M., from whom the consideration moved and to whom it

had been delivered on its execution. If so, B. and M. had a right to destroy it and substitute one directly to M.

November 9th 1868. Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ. READ and AGNEW, JJ., absent.

Appeal by Benjamin Work, Sr., from the decree of the Court of Common Pleas of *Allegheny county*, in the matter of the distribution of the estate of William McClelland, deceased : No. 116, to October and November Term 1868.

The decedent died in 1853, having made his will, by which he directed that certain real estate should be sold ; that three-fourths should go to three living daughters, and one-fourth to the children of Elizabeth Work, a deceased daughter, who had left to survive her a husband, Benjamin Work, the appellant, and four children, of whom Benjamin F. Work was one. Benjamin Work the father afterwards married Magnitia Work, the appellee. The auditor found that the share of Benjamin F. Work amounted to $354.29. Benjamin Work, Sr., and Magnitia Work both claimed this share.

Mrs. Work claimed under an assignment from B. F. Work, dated at Reading, March 5th 1866, which she gave in evidence. The consideration was stated in the assignment to be $200.

B. Work, Sr., alleged that his son had assigned the fund to him in the spring of 1866 and that the assignment had been improperly destroyed by his son and Mrs. Work.

To sustain his claim before the auditor, he examined James M. Porter, a lawyer of Easton, who testified that on the 5th of April 1866, the father and son being present in his office, the son stated that he had made an assignment of his share in his grandfather's estate to his father, which had been duly acknowledged and delivered to his father; that it had been placed in the hands of Mrs. Work for safekeeping, and he had afterwards obtained it from Mrs. Work and destroyed it; that afterwards, without the knowledge of his father, he had made a second assignment to Mrs. Work. He also gave in evidence an assignment to him by the son, " for a valuable consideration," dated June 2d 1866, of the same share. The assignment recited :—

" This conveyance and transfer is made in place of one heretofore executed for the same purpose, which has been destroyed, and it is understood and agreed that this conveyance and transfer is to revoke and make void a certain assignment heretofore made by said Benjamin F. Work to Magnitia Work."

Appended to the foregoing assignment was the following of the same date, executed by Mrs. Work :—

" For a valuable consideration, I assign and transfer all my right, title and interest in the estate and property mentioned in the foregoing conveyance and assignment, to said Benjamin Work,

and agree to the revocation of the assignment heretofore made to me by said Benjamin F. Work."

There was no evidence of any consideration for the assignment from the son to the father.

Mrs. Work then gave evidence of a complaint by the father, before an alderman of Reading, on the 27th of April 1866, that his wife, charging her by the name of Magnitia Hutchings, and son had "fraudulently and maliciously" destroyed the 1st assignment, and that they had "feloniously" taken and stolen from him a government bond, some money and a gold watch. Under this complaint a warrant was issued the same day for the arrest of the wife and son. The warrant was sent to Pittsburg, where the parties were arrested by an officer of that city and taken to Reading. The officer testified that after the parties on both sides had been before the alderman for some time, and after much conversation between their lawyers, the alderman told him to let them go, the matter having been compromised, and that the parties went together to the lawyer's office.

B. F. Work, the son, testified, that Mrs. Work had furnished him money and clothes, to repay which she asked him to make to her an assignment of his interest in his grandfather's estate. He agreed to do so. Afterwards, in a conversation on the subject with his father and her, his father said to her, she had better have the assignment made in the father's name, so that in case they moved to the West, as they contemplated, it would be easier for him than for her to attend to the settlement. The son and his father then went to a lawyer's office, had the assignment drawn in that way and acknowledged, and left in the son's hands. He afterwards gave it to Mrs. Work; it was never in possession of the father; it was made in his name only because it would be more convenient to settle the business. Afterwards, upon consulting a lawyer in Reading, and being advised by him that it would be legal and proper to make an assignment directly to Mrs. Work, he executed the one given in evidence by Mrs. Work and for the same consideration, and destroyed the first one. The second assignment to his father was signed both by him and Mrs. Work, when they were under arrest in Reading, upon his father's complaint; they were strangers there without friends, and thought they could not procure bail. Their counsel in Reading testified, that after some negotiations in the alderman's office, whilst the wife and son were under arrest, the father agreed to withdraw the prosecution, on condition that the son would make an assignment of the fund to him, the wife give him some patterns which were then in Harrisburg, and the defendants pay the costs. Their counsel told them that they would have to accept this proposition, or go to prison. The second assignment to the father was then executed and delivered.

[Work's Appeal.]

The auditor, Jacob F. Slagle, Esq., reported, that Mr. Porter's testimony as to the declarations of the son was not, in his opinion, incompetent to destroy the assignment to Mrs. Work, and that the testimony of declarations of the son was incompetent, he himself being a competent witness; that B. F. Work, the son, had no power by a subsequent assignment to revoke the assignment to Mrs. Work; and that Mrs. Work being a married woman had not power to validate the assignment to the father. In conclusion, he awarded B. F. Work's interest in the decedent's estate to Magnitia Work.

B. Work, Sr., filed exceptions to the report, which was confirmed by the Orphans' Court. He appealed from the decree of confirmation, which he assigned for error.

*J. A. Lowrie*, for appellant.—Under sections 128 and 129 of Act of March 31st 1860, Pamph. L. 412, Purd. 238, pl. 137, 138, Mrs. Work and B. F. Work were guilty of conspiracy and fraudulently destroying the assignment. Everything is to be presumed against them as destroyers of the assignment: Broom's Leg. Maxims 426, and cases cited. The testimony of Mr. Porter was competent. The destruction of a paper may be proved by the declarations of the adverse party: 3 Phillips on Ev., by Cowen & Hill 1217; Corbin v. Jackson, 14 Wend. 619; Bean v. Bean, 12 Mass. Rep. 20; 4 J. J. Marsh. 586; 2 Phillips on Ev., p. 67, n. 67; Moore v. Tracy, 7 Wend. 229. Mrs. Work's admission in the assignment, June 1866, shows the existence of the first assignment to the appellant: Commonwealth v. Call, 21 Pick. 515. A deed executed under a lawful arrest is not void for duress: Stouffer v. Latshaw, 2 Watts 167; Winder v. Smith, 6 W. & S. 429. Mrs. Work cannot claim under an assignment obtained by fraud: Broom's Leg. Maxims 573, 576, 577.

*J. H. Large* (with whom was *N. U. Shafer*), for appellee.—B. F. Work was a competent witness: Dayton v. Newman, 7 Harris 198; 1 Greenl. Ev., § 384, and notes. Mrs. Work as a married woman would not be bound by her assignment: Stoops v. Blackford, 3 Casey 213; Pettit v. Fretz, 9 Id. 118; Buchanan v. Buchanan, 10 Wright 188.

The opinion of the court was delivered, January 4th 1869, by

WILLIAMS, J.—This was a contest between husband and wife, each of whom claimed, as assignee, Benjamin F. Work's share of the fund for distribution. Benjamin F. Work is the appellant's son by a former wife, who was a daughter of the testator, William McClelland, deceased, and entitled as legatee of his maternal grandfather to the one-sixteenth part of his estate.

[Work's Appeal.]

On the 5th of March 1866, he assigned all his interest in his grandfather's estate to his stepmother, the appellee, in consideration of his indebtedness to her for money and clothing. Under this assignment, if valid, she was entitled to his share of the fund for distribution. His subsequent declarations, made in her absence, were not competent to establish a prior assignment of the same interest to his father, and his destruction of the assignment, with the privity of his stepmother, before making the assignment to her.

He was a competent witness to prove these facts, but his declarations were inadmissible for the purpose, and the auditor rightly decided that they were wholly incompetent to invalidate his assignment to his stepmother. It is equally clear that his subsequent assignment to his father did not vest in him any title to the estate. Having previously conveyed all his interest to his stepmother, he had nothing left to transfer or assign. And though he undertook, he had no power to revoke his assignment to her, or to divest her title under it. Nor was his subsequent assignment rendered valid by the assignment of his stepmother endorsed thereon, agreeing to the revocation of the assignment made by her, and transferring all her interest in the estate to her husband. Even if she had the power to make it, the evidence would have justified the auditor, as we think, in finding that it was made under duress, and that for this reason it was not valid or binding on her.

It was executed while she was under arrest, upon complaint made against her by her husband; and it was executed for the purpose of procuring her discharge from the arrest, in pursuance of his agreement to withdraw the prosecution if she would make the assignment. His withdrawing of the prosecution upon obtaining the assignment, shows the arrest to have been a mere pretext in order to procure it.

Though the auditor did not find that it was made under duress, he decided that it was void for another reason. He was of the opinion that the appellee being a married woman, had no power to transfer her rights of property by an instrument of writing executed by herself alone, and therefore that she was not bound by her assignment.

But it is not necessary to decide this question, as the appellant did not give the assignment in evidence as the foundation of his claim; nor does he now claim title under it. "It was offered as the admission of the appellee, and of him under whom she claims title, and for no other purpose," as the printed argument of his counsel expressly declares. Does it, then, contain any such admission as will defeat or set aside the title of the appellee? It does not admit, or show on its face, that the assignment originally made to the appellant was prior to the assignment made to the appellee;

or that it was destroyed without the appellant's knowledge or consent; or that the appellee or assignor was a party to its destruction. It cannot, therefore, have any more force or effect as an admission, than it has as a conveyance.

The appellant, failing to show by his own evidence any title to the fund, falls back upon the testimony of Benjamin F. Work, who was examined as a witness for the appellee, and he is undoubtedly entitled to whatever benefit or aid he can derive from his testimony in support of his claim.

His counsel maintains that the witness, in his examination in chief, stated the facts on which the appellant's claim is based, viz., the assignment to his father; the act of procuring it from his stepmother; its destruction by him, and the assignment of the same interest to her : and he insists that from these facts the presumption arises *in odium spoliatoris*, that the assignment to the appellant was for the whole interest claimed by the appellee; that it was duly executed and delivered, and that it was given for a good and valuable consideration. But if the testimony of Benjamin F. Work is believed, the appellant never had possession of the assignment, nor a particle of interest under it, but was a mere trustee for his wife from whom the consideration moved, and to whom the assignment was delivered immediately after its execution.

If this be so, then there is no foundation for the presumption *in odium spoliatoris*, and it does not arise. The parties did no more than they had a right to do. If the husband was a mere naked trustee for his wife, and the assignment was not delivered to him, then they had the right to change the form of the instrument so as to make it conform to and express the real character of the transaction. And the evidence leaves little room for doubt that the substituted assignment to the wife did express its true character.

The appellant did not even attempt to show any consideration for the assignment arising from prior indebtedness, or from the advancement of any moneys by him at the time of its execution. If he had given any consideration for the assignment, it would doubtless have been easy for him to have shown it. The absence of any such proof is a strong circumstance tending to show that there is no equity in his claim, and that the original assignment to him was, as testified by the assignor, intended for the use and benefit of his wife. Under the evidence she was clearly entitled to the fund.

As this was the conclusion reached by the auditor in his very able report, which was confirmed by the decree of the Orphans' Court, the appeal must be dismissed.

Decree affirmed at the costs of the appellant.